E-FILED
Wednesday, 03 December, 2014 03:43:07 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY DEAN WITTER CAPITAL I INC. TRUST 2002-NC5, POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2002,<br><br>    Plaintiff,<br><br>    v.<br><br>CHAD D HOPKINS, ASSET ACCEPTANCE LLC, SCOTT SIERON, PHYLLIS NUGENT,<br><br>    Defendants. | Case No. 12-cv-1176 |

## O R D E R & O P I N I O N

This foreclosure matter is before the Court on Plaintiff's Motion for Summary Judgment. (Doc. 21). This matter has been stayed by request of the parties for several weeks while they attempted to settle the matter. The deadline for the stay has passed and the parties have not apprised the Court of the status of the settlement proceedings. Thus, because the stay has elapsed and the motion has been fully briefed and is ready for disposition, the Court is ready to issue a ruling. For the reasons stated below, the Motion for Summary Judgment (Doc. 21) is DENIED. Plaintiff's Motion To Appoint A Special Commissioner (Doc. 22) is also DENIED.

**FACTUAL BACKGROUND**

Plaintiff, Deutsche Bank National Trust Company, commenced this civil action by filing its Complaint (Doc. 1) on June 4, 2012 seeking to foreclose the mortgage and the mortgaged property of the Defendants, Chad D. Hopkins and Phyllis Nugent. On July 29, 2002, New Century Mortgage Corporation (hereinafter "New Century") lent Defendant Hopkins $98,550.00. Hopkins executed a Note,[1] and along with Defendant Nugent, executed a Mortgage in favor of New Century in exchange for receiving this money. The mortgaged Property is

> Lot Five (5) in Lakeview Subdivision of Part of the Northwest Quarter of Section 26, Township Five (5) North, Range Three (3) East of the Fourth Principal Meridian, according to the plat thereof recorded in Plat Book 7, page 51, as Document Number 77- 56139, situated in Fulton County, Illinois.
>
> Permanent Index No. 18-19-26-103-005.

It is commonly known as 13687 North Lakeview Drive, Lewistown, IL 61542.

Defendant Hopkins agreed to pay interest at a yearly rate of 9.75% at the time he executed the original Note and Mortgage with New Century. Defendant Hopkins also agreed to make monthly payments on the first of every month, starting September 1, 2002. According to the Note, the monthly payment was to be $846.70. The Mortgage provides that the Note is fully secured, stating that:

> "This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under

---

[1] Plaintiff has attached a secondary note evidencing a promise to pay $5,475.00 to an unspecified Lender to its motion for summary judgment. (Doc. 21-1). This document bears facsimile transmission dates of July 16, and 26, 2002 and it is purportedly signed by Defendant Hopkins. Since Plaintiff does not explain the significance of this secondary note, the Court will ignore it for purposes of deciding this motion.

> this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property…"

> "If [after notice] the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

According to the Mortgage, Defendants also agreed to pay taxes, insurance, and any other escrow items that may apply.

On October 12, 2005, Defendant Hopkins entered into a Loan Modification Agreement ("LMA") with Plaintiff pursuant to which Defendant Hopkins agreed to pay interest at a yearly rate of 8.00% and to make monthly payments of $809.09 on the first of every month, starting December 1, 2005. The LMA stated that it was amending and supplementing the Note and Mortgage. However, the LMA also specifically states: "The Borrower also will comply with all other covenants, agreements and requirements of the [Mortgage], including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that the Borrower is obligated to make under the [Mortgage]. . . ." Sometime thereafter, the monthly payment was set at $843.26.

On September 1, 2011, Ocwen Loan Servicing, LLC ("Ocwen") took over servicing the Mortgage and Note from Litton Loan Servicing, LP ("Litton"). According to an affidavit provided by an Ocwen employee, Defendants failed to pay the monthly installments of principal, interest, taxes, insurance, and any other

3

escrow items applied since June, 2011 through the present. Defendants have provided evidence that Litton informed them on June 1, 2011 Defendants owed $3,219.81 and on June 16, 2011 that the loan was in default and that Defendant Hopkins needed to pay $4,905.10 to bring the loan current. Defendants dispute these amounts and claim they are incorrect. Additionally, Defendants have provided evidence that they made June, July, August and September 2011 payments of $900.00 each and that Litton accepted all of these payments except the September 2011 payment for a total of $2700. In short, Defendants contend they were not in default on June 16, 2011.

On May 3, 2012 New Century assigned its interest in the Mortgage to the Plaintiff.[2] (Doc. 21-3 at 36-37). Plaintiff then received all of New Century's interests in the Property pursuant to the Mortgage. (Doc. 21-4, 21-2). Plaintiff is a national association chartered under the laws of New York, and having its principal place of business and headquarters in the State of New York. Defendants Hopkins and Nugent are citizens and residents of the State of Illinois. Plaintiff now seeks to foreclose upon the Mortgage and Property.

## LEGAL STANDARDS

This civil action is before the Court pursuant to diversity jurisdiction conferred by 28 U.S.C. § 1332. In diversity cases, the district courts apply federal procedural law and state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339,

---

[2] Despite that New Century did not assign the Defendants' Mortgage to Plaintiff until May 3, 2012, the LMA between Plaintiff and Defendant Hopkins is dated October 12, 2005.

4

345 (7th Cir. 2010). Plaintiff does not explicitly discuss choice of law (though it cites to cases applying Illinois law), but the Court notes that the Mortgage's governing law provision states that it is "governed by federal law and the law of the jurisdiction in which the Property is located," which is Illinois. (Doc. 21-3 at 26). As the parties are before the Court pursuant to its diversity jurisdiction; this Court will apply state law to the mortgage dispute and employ the forum state's choice-of-law principles. *United States Textiles, Inc. v. Anheuser–Busch Cos.*, 911 F.2d 1261, 1269 (7th Cir. 1990) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1943)). Illinois courts routinely enforce contractual choice-of-law provisions in disputes such as this one where the Mortgage contains a governing law provision. *See Belleville Toyota v. Toyota Motor Sales, U.S.A.*, 770 N.E.2d 177, 194 (Ill. 2002) ("Generally, choice of law provisions will be honored."). As no party argues for the application of another state's law, the Court will apply Illinois law as contemplated by the Mortgage. *See Santa's Best Craft, LLC*, 611 F.3d at 345 (applying the substantive law of Illinois, the forum state, where the parties failed to raise any choice-of-law concerns).

This lawsuit is ostensibly based on a contract, the interpretation of which is an issue of law to which summary judgment is well-suited if the terms are clear and unambiguous. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379-80 (7th Cir. 2009) (citing *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009); *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771 (7th Cir. 2000); *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

5

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may demonstrate the absence of a genuine dispute of material fact by citing to admissible evidence, or by showing that the nonmovant cannot produce admissible evidence to support a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Upon such a showing by the movant, the nonmovant may not simply rest on his or her allegations in the complaint, "[t]he nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (internal quotations and citation omitted); Fed. R. Civ. P. 56(c)(1). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).

## DISCUSSION

Plaintiff essentially alleges Defendants entered into a contract, failed to perform according to the terms of that contract, and now Plaintiff has the right to the remedy provided for by the contract. Here, the Mortgage provides that New Century is entitled to 1) the repayment of the debt evidenced by the Note, along with interest, payment of "all other sums due under [the Mortgage], with interest," and 2) the Defendants' performance of their covenants and agreements under the Mortgage and Note. (Doc. 21-3 at 18-19). As a result of the Mortgage, New Century

6

has a security interest in the Property to secure the debt evidenced by the Note, which shows that Defendant Hopkins promised to repay New Century for the loan of $98,550 under the terms described therein. (Doc. 21-3 at 32-34). New Century assigned the Mortgage to Plaintiff, so Plaintiff became entitled to all rights secured by the Mortgage.[3]

---

[3] Defendants summarily dispute that the assignment between New Century and Plaintiff is valid. Specifically, Defendants allege that New Century had no right to assign the loan and Mortgage to Plaintiff because of Chapter 11 bankruptcy proceedings involving New Century's parent company. This argument is not an issue of Article III standing, but rather of who is the real party in interest under Federal Rule of Civil Procedure 17. Seventh Circuit precedence makes clear that such an argument is not jurisdictional and is subject to waiver. *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159-60 (7th Cir. 1996). Defendants failed to provide this defense in their Answer (Doc. 10) as required under Rule 8(c)(1) of the Federal Rules of Civil Procedure, so the argument is deemed waived.

Even assuming the Defendants did not waive this argument for failure to address it in their Answer; they have waived it by not producing a single piece of actual evidence that conflicts with the documentary evidence in the record. Plaintiff has produced documentary evidence that establishes New Century extended Defendant Hopkins the loan, took a security interest in the Property pursuant to the Mortgage, and then properly assigned the security interest to Plaintiff. Curiously, Defendants claim they can produce the supporting documentary evidence if requested to do so. Instead of producing specific evidence to verify their claims, Defendants cite to docket entries in a bankruptcy proceeding from another judicial district and state that they assume the Court will view the documents through the ECF system. The Court has viewed the referenced documents and has found them to be voluminous, dense and complex. Defendants failed to even cite to the pages of these documents on which they would like the Court to focus. Courts are not obligated to "scour a record to locate evidence supporting a party's legal argument. Perfunctory or undeveloped arguments are waived." *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (citations omitted). Clearly then, the Defendants have decided to forego their responsibilities in responding to a summary judgment motion. To survive summary judgment, the nonmovant must show through <u>specific documentary evidence</u> that a genuinely disputed issue of material fact exists. *See Warsco*, 258 F.3d at 563. Defendants have failed to carry their burden of production on this issue and the Court will not entertain the argument any further.

In any event, the issue may be nothing more than a red herring since it is undisputed that Defendant Hopkins entered into the Loan Modification Agreement with Plaintiff—not New Century—in 2005, roughly two years before the New

*Plaintiff's "Prima Facie" Case*

Plaintiff contends that summary judgment is appropriate merely because it has provided the Court with the operative Mortgage and Note, and under Illinois law that is all that is necessary to establish a *prima facie* case for foreclosure. Plaintiff cites to *Kondaur Capital Corp. v. Sreenan*, 2013 WL 6869788 (Ill. App. Ct. 1st Dist. 2013) in support of its proposition. (Doc. 21 at 5). *Kondaur Capital Corp.* is an unpublished opinion filed under Illinois Supreme Court Rule 23.1, which states such unpublished opinions designated under Rule 23 are "not precedential and may not be cited by any party except to support contentions of double jeopardy, res judicata, collateral estoppel or law of the case", none of which are at issue in this matter. Plaintiff also cites to *Farm Credit Bank of St. Louis v. Biethman*, 262 Ill. App. 3d 614, 622, 634 N.E.2d 1312, 1318 (1994), where an Illinois appellate court discussed the attachment of a mortgage and note to a complaint of foreclosure in the context of satisfying pleading standards under the Illinois Mortgage Foreclosure Act, ("IMFA"). Indeed, the relevant portion of the IMFA, 735 ILCS 5/15-1504, reveals that the statute requires a foreclosure complaint to attach copies of the mortgage and note as a pleading requirement, not as a condition that preordains liability for summary judgment purposes.

Illinois cases make clear—as common sense dictates—that a foreclosure plaintiff must also establish that the defendant is in default on the respective loan to secure foreclosure on a mortgage. *See, e.g.*, *Miller v. Swanson*, 66 Ill.App.2d 179, 185, 213 N.E.2d 294 (1965) (promissory notes, trust deed, and "proof of default in

---

Century Bankruptcy was even commenced, thereby acknowledging that Plaintiff had the authority to amend and supplement the Note and Mortgage.

the performance of their terms" established right of recovery and foreclosure). Proof of default is often presented in the form of an affidavit from one with personal knowledge of the default. *See* 735 ILCS 5/2-1005(c) (summary "judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Of course, under Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment in federal district courts, such affidavits are also contemplated and commonplace. *See* Fed. R. Civ. P. 56(c)(1); *see also First Merit Bank, N.A. v. Dziedzic*, 13-cv-5202, 2014 WL 4638578, ay *3 (N.D. Ill. Sept. 17, 2014).

Plaintiff has attached an affidavit from an Ocwen employee, Mary Maguire, who swears that she has personal knowledge of the matters discussed within her affidavit and could testify to those matters if called upon to do so. (Doc. 21-3 at 1). She explains that the basis for her personal knowledge comes from the fact that in the ordinary course of her employment as a Contract Management Coordinator for Ocwen, she reviewed and analyzed loan records for loans that Ocwen services. She explains that she is familiar with Ocwen's books and records, including records concerning the loans Ocwen services, and she explains that such records were created and maintained in the ordinary course of Ocwen's business. These records include loan payment histories for each of Ocwen's loans and computer generated records. Lastly, she also explains that she reviewed and is familiar with the business records of the particular loan at issue in this case.

Defendants take issue with Maguire's affidavit, contending that she cannot possibly have personal knowledge of Litton's records and the events preceding Ocwen's taking over as Plaintiff's loan servicer. (Doc. 29 at 6). Plaintiff claims Defendants were in default before Ocwen took over servicing for Litton in September 2011. Plaintiff asserts—and Defendants dispute—Defendant Hopkins failed to pay the monthly installment payment due in June 2011. (Doc. 29 at 6). Defendants further contend that Litton was mistaken in its calculations. They dispute the amounts that Litton advised Defendants they owed. Thus, the crucial evidentiary disputes in this lawsuit are not over amounts contained in records generated by Ocwen; the disputes are over records generated and maintained by Litton.

Plaintiff fails to address the issue of the sufficiency of Maguire's affidavit as it concerns Litton's records in any meaningful way. Plaintiff simply cites to a case where a foreclosure defendant argued that the affiant's testimony was inadmissible hearsay. *Bank of New York Mellon v. Murillo*, No. 12-cv-6726, 2014 WL 773041, at *2 (N.D. Ill. Feb. 25, 2014). Specifically, the *Murillo* court analyzed whether an Ocwen employee's affidavit testimony concerning records that the employee did not personally create was inadmissible hearsay. *Id*. The Court concluded it was not inadmissible hearsay because the Ocwen employee there provided testimony that established 1) he had personal knowledge of the Ocwen records at issue and 2) said records satisfied the criteria for records of regularly conducted business activity under Federal Rule of Evidence 803(6). *Id*. Here, Defendants' argument is not that Ms. Maguire's testimony is inadmissible hearsay or that she does not have personal

10

knowledge of Ocwen's records; rather Defendants contend that Ms. Maguire, as an employee of Ocwen, has no personal knowledge of how Ocwen's predecessor, Litton, created and maintained records. Defendants' argument is reasonable.

An affidavit used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and <u>show that the affiant or declarant is competent to testify on the matters stated</u>." Fed. R. Civ. P. Rule 56(c)(4) (emphasis added); *Luster v. Illinois Dep't. of Corr.*, 652 F.3d 726, 731 n. 2 (7th Cir. 2011). Moreover, Federal Rule of Evidence 602 provides that a "witness may only testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Nothing in the record supports the conclusion that Ms. Maguire is competent to testify about Litton's records or has any basis to possess personal knowledge concerning Litton's records.

This Court does not go so far as to find that there is no possible basis for Ms. Maguire to have personal knowledge of Litton's records or events preceding Ocwen's service of the loan at issue in this case. After all, she may have been a Litton employee who was absorbed by Ocwen at the time the servicing of the loan switched hands or she may have otherwise familiarized herself with Litton's practices and documentation. But her affidavit does not speak to any basis for her knowledge of Litton's records and it is not appropriate for the Court to make assumptions in favor of a movant on summary judgment. In fact, when ruling on a motion for summary judgment, the Court must view the evidence on record in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*,

565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Smith*, 560 F.3d at 699. Summary judgment is the time for the parties to show their evidentiary hands not to premise their contentions on unverified assumptions. As the *Murillo* court recognized, according to Seventh Circuit precedent, "[a]t summary judgment, the party seeking to offer the business record must attach an affidavit sworn to <u>by a person who would be qualified to introduce the record as evidence at trial such as a custodian or otherwise qualified witness who can speak from personal knowledge that the documents were admissible business records</u>." *Murillo*, 2014 WL 773041, at *2 (quoting *Thanongsinh v. Bd. Of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) (internal quotations omitted) (emphasis added). Thus, Ms. Maguire's affidavit should have included information from which the Court could conclude she was either the custodian or otherwise qualified to speak from personal knowledge that the Litton documents she relied upon are admissible business records.

Unfortunately, there is no mention in Ms. Maguire's affidavit of her familiarity with Litton's records, what tools Litton used to track Defendants' payments or how information concerning Defendants' loan was recorded and maintained by Litton. Ms. Maguire states that <u>Ocwen</u> uses of a program called "Real Servicing" to automatically record and track mortgage payments, which is recognized throughout the industry. (Doc. 21-3 at 2). She states records that she reviewed were made in the regular course of <u>Ocwen's</u> business, that Defendants' payments were made in accordance with the Real Servicing procedure, and that entries were made at or near the time that the payment was received. (Doc. 21-3 at

12

2). She concludes by stating that based on the foregoing information concerning Ocwen's procedures and servicing of the Defendant Hopkins' loan, he failed to pay amounts due under the Note. In a single sentence, Ms. Maguire alludes to records beyond those created by Ocwen; she states: "I have reviewed and am familiar with the business records of the Subject Loan in connection with executing this affidavit, including but not limited to the records referenced above." This affidavit testimony is insufficient to establish that Ms. Maguire is qualified to verify the admissibility of Litton's materials as business records. *See Citibank, N.A. v. Wilbern*, No. 12 C 755, 2014 WL 1292374 (N.D. Ill. Mar. 28, 2014) (striking foreclosure plaintiff's evidence for which an affiant had no basis to authenticate it and denying summary judgment for failure to show the absence of a genuine issue of material fact sought to be established by the stricken evidence).

Plaintiff's motion hinges upon whether Defendants were actually in default on the loan evidenced by the Note yet Plaintiff's evidence of default consists of documents that have not been properly authenticated as records of regularly conducted activity under Federal Rules of Evidence 902(11) and 803(6).[4] Thus, the Court cannot rely on the authenticity or accuracy of those documents and it must deny summary judgment to Plaintiff.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 21) and Motion To Appoint A Special Commissioner (Doc. 22) are DENIED without

---

[4] Incidentally, the Court has reviewed all 111 pages of Ms. Maguire's affidavit and supporting documentation was unable to discern how Litton used the proffered information to arrive at the figures it alleges Defendants owed on June 1, 2011 and June 16, 2011, $3,219.81 and $4,905.10, respectively.

13

prejudice. The Court is amenable to entertaining another round of summary judgment if the proper evidence can be gathered in a reasonable timeframe; otherwise this case must proceed to trial. This matter is set for a telephonic status hearing on December 22nd, 2014 at 11:00 am.

Entered this 3rd day of December, 2014.

                                                                                                             s/ Joe B. McDade
                                                                                                        JOE BILLY McDADE
                                                                   United States Senior District Judge